THOMAS H. ELLIS, ET AL. *v.* W. B. GRIGSBY, ET AL.

[Abstract Kentucky Law Reporter, Vol. 5—854.]

**Land Held in Trust.**

 Where a son furnished to his mother money to be used in the purchase of land under an agreement with her that upon the sale of the land, or in any event at her death, he should be repaid, and the mother sells the land and buys other land, she holds so much of it in trust for her son as will reimburse him for the money advanced, and either he or his creditors may subject the land to its payment.

APPEAL FROM NELSON CIRCUIT COURT.

April 22, 1884.

OPINION BY JUDGE LEWIS:

These two consolidated actions were brought by appellants under Civ. Code 1876, § 439, to subject to the satisfaction of their respective judgments against appellee, W. B. Grigsby, his interest in a certain tract of land, the title to which is in his mother, appellee, Martha Grigsby. It is alleged that appellees, W. R. Grigsby and Martha Grigsby, father and mother of W. B. Grigsby, borrowed of him about $800 for which they executed their joint obligation by which they agreed to invest that sum for his benefit in a certain tract of land, the deed to which was made to Martha Grigsby.

The deposition of W. B. Grigsby was taken in which he stated that about 1875 or 1876 his father and mother purchased a farm from Grundy at $4,400, and he put into the purchase $780 under a written agreement between them that at the death of his parents

he was to have one-third of the land and said sum and interest. But the witness refused to file the writing or make it a part of his deposition. Afterwards, upon motion of appellants, a rule was issued by the court requiring him to file the written agreement, but in his response to the rule he stated that since giving his deposition he had lost the paper and failed to file it.

Subsequently his deposition was retaken, and though still failing to file the agreement he stated that it was stipulated therein that the land was not to be sold except with his sanction, and if sold the amount he had advanced was to be reinvested in another tract of land. Another witness, whose statements we think are entitled to full weight and who saw the written agreement, testified that it was in substance stated therein that W. B. Grigsby invested $700 or $800 in a certain farm mentioned, the title to which was in Martha Grigsby, and he was to have the same refunded to him upon the death of his mother and father or upon a sale of the land in which it was invested, and to be consulted as to the reinvestment.

For their defense to the actions W. R. Grigsby and Martha Grigsby say in their answer that her leading inducement to the purchase of the land from Grundy was to restrain her two sons, R. T. and W. B. Grigsby, from intemperance and idleness, and that she agreed with them to sell her home in town and purchase a farm, they agreeing on their part to work it, quit drinking, and on the death of their father and mother they were each to have one-third of the land; that it was distinctly agreed if they, R. T. Grigsby and W. B. Grigsby, continued to drink whiskey and failed to work the farm she had the right to sell the land and dispose of the purchase-money or the land by will or otherwise to whom she thought fit. They allege that R. T. and W. B. Grigsby have wholly failed to keep their part of the agreement and in consequence thereof have forfeited their interest in the land, and W. B. Grigsby his right to the money invested by him therein. However meritorious the purpose of the father and mother may have been, it does not appear that it was made a part of the written agreement between them and W. B. Grigsby, under which his money was borrowed or invested in the land, that he was to forfeit his right to both money and land in case he failed to work upon the farm or cease his intemperate habits. If such conditions ever were prescribed they constituted no part of the written agreement; nor are they supported by such evi-

dence as would deprive W. B. Grigsby of his right to the money advanced by him.

It appears that the tract of land purchased from Grundy was subsequently sold and exchanged by Mrs. Grigsby for another farm the title to which she now has. But no part of the sum of $775 or $780, which was about the amount borrowed from W. B. Grigsby has ever been repaid to him; nor was the written contract by which the amount was to be paid to him upon the death of his parents or the sale of the Grundy land canceled, but when these two actions were commenced was a subsisting and binding contract. We are of the opinion that upon the sale of the land in which the money of W. B. Grigsby was invested he was entitled to recover it, and that the land now owned by Mrs. Grigsby may be made subject to its payment, and that consequently appellants now have the right to a sale of so much of the land as may be necessary to pay their debts, not exceeding the amount originally loaned or invested in the Grundy tract by W. B. Grigsby.

Wherefore the judgment is *reversed* and cause remanded for further proceedings consistent with this opinion.

*Muir & Wickliffe, for appellants.*